UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK LAMOND MITCHELL,

    Petitioner,

v.

    CASE NO. 15-12636
    HONORABLE GEORGE CARAM STEEH

BONITA HOFFNER,

    Respondent.
_____/

**OPINION AND ORDER
GRANTING RESPONDENT'S MOTION FOR SUMMARY
JUDGMENT AND DISMISSAL OF THE PETITION [6],
DISMISSING THE HABEAS PETITION [1] WITH PREJUDICE,
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Derrick Lamond Mitchell (petitioner) has filed a pro se application for the writ of habeas corpus under 28 U.S.C. § 2254. The pleading challenges Petitioner's convictions for attempted possession of 225 to 649 grams of cocaine, see Mich. Comp. Laws § 333.7407a(1), and conspiracy to possess with intent to deliver 225 to 649 grams of cocaine, see Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 333.7401. Petitioner was sentenced in 2001 and is serving two consecutive terms of twenty to thirty years in prison. He alleges as grounds for relief that (1) the State withheld exculpatory evidence from him, (2) newly discovered evidence demonstrates that he is innocent, and (3) he was denied effective assistance of counsel when his trial attorney failed to fully explain the prosecution's plea offer to him and advised him not to accept the offer. Respondent Bonita Hoffner (respondent) argues in a motion for summary judgment and dismissal of the petition that petitioner failed to comply with the one-year

statute of limitations.  The Court agrees that the petition was not timely filed. Accordingly, respondent's motion for summary judgment will be granted and the habeas petition will be dismissed with prejudice.

## I.  Procedural History

### A.  The Charges, Trial, and Direct Appeal

The charges against petitioner arose from two separate arrests on the night of August 14 to 15, 1998.  The state court accurately explained the incidents as follows:

> Police officers stopped and impounded a white Cadillac driven by Kenneth Lyons and occupied by three passengers.  On a subsequent search of the trunk, the police found boots with hollowed-out soles containing approximately 590 grams of cocaine.  At this point, defendant [Derrick Lamond Mitchell] was not linked to any offenses, although the car had been registered in his name until about a month before.
>
> After the white Cadillac was impounded, a gray Cadillac, driven by defendant, was identified as appearing to be "casing" the impound lot, and, later, defendant's two passengers were apprehended after the impound-lot office had been broken into.  All three [men] were arrested. The gray Cadillac once was registered to Kenneth Lyons, the driver of the white Cadillac.  In the trunk of the gray Cadillac, the police found a scale typically used for measuring drugs, and a towing receipt with the gray Cadillac's vehicle identification number and Lyons' name.

People v. Mitchell El, No. 236169, 2003 WL 22439682, at *1 (Mich. Ct. App. Oct. 28, 2003).  The link between petitioner and Kenneth Lyons (Lyons) was further established through three addresses in Toledo, Ohio:

> Lyons and defendant [Mitchell] had used the same address on Norwood in Toledo when they registered the two Cadillacs in the past.  Defendant used the Norwood address when posting bond in the case involving the attempted break-in at the impound garage, and acknowledged that it had been his home address since the early 1980s.  He also acknowledged that Lyons had lived there briefly while dating defendant's sister.
> When Lyons was arrested, the car he was driving was registered to a woman who lived on Mettler in Toledo.  When defendant was arrested at the impound garage break-in, he gave as identification a driver's license issued to a man who lived at the same address on Mettler.

> Ohio police investigating drug offenses in their jurisdiction searched a house on Woodland in Toledo. Defendant had been observed entering the house in the past, and the raid occurred while he was parked outside the house. Police found the same brand of hollowed-out boots (some packed with cocaine) in the house. Also located during the search were three court notices and correspondence in defendant's name, although the Woodland address was not shown on those papers. Defendant testified that the papers were not found in the house, but, rather, were taken from his car when he was stopped outside the house. Others were present in the home when it was raided, and a utility bill for the house had a name other than defendant's. When booked by Toledo police, the booking paperwork showed the Woodland address as defendant's home address. While the normal booking practice is to write down the address given by the arrestee, it is possible that the address was derived from the location of the search.

Id.

On June 1, 2001, petitioner pleaded guilty to breaking and entering an unoccupied building (the towing company's office). A few days later, petitioner was tried before a jury in Monroe County Circuit Court on the drug and conspiracy charges. He was the only defense witness, and his

> primary defense was that he did not know anything about the cocaine in the trunk of the white Cadillac, and he merely served as a driver and lookout for his passengers who wanted help in stealing that vehicle. [He] also denied residing at the Woodland address in Toledo. He further denied being involved with drugs, and maintained that a police detective set him up for failing to pay a bribe.

Id. at *2.

On June 8, 2001, the jury found petitioner guilty, as charged, of attempted possession of 225 to 649 grams of cocaine and conspiracy to possess with intent to deliver 225 to 649 grams of cocaine. On August 8, 2001, the trial court sentenced petitioner to two consecutive terms of twenty to thirty years in prison.

In an appeal as of right, petitioner argued that: (1) the trial judge was biased; (2) the trial court denied him an opportunity to present a defense when the court failed to

compel the attendance of a Toledo police officer who searched the house in Toledo; (3) his attorney's comment about the jurors deprived him of a fair and impartial jury; and (4 - 5) the trial court erred by allowing the prosecutor to (a) introduce a LEIN printout of petitioner's arrests and (b) admit evidence of a pending cocaine charge against petitioner in Toledo. The Michigan Court of Appeals rejected these arguments and affirmed Petitioner's convictions in an unpublished, per curiam opinion on October 28, 2003. See Mitchell, 2003 WL 22439682. On June 30, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Mitchell-El, 470 Mich. 884; 682 N.W.2d 93 (2004).

**B. Post-Conviction Review**

On June 22, 2005, petitioner filed the first of five motions for relief from judgment. He argued that (1) newly discovered exculpatory evidence from Lyons demonstrated his innocence, (2) a retroactive change in the law required re-sentencing, (3) the prosecutor's misconduct deprived him of a fair trial, (4) trial counsel was ineffective, and (5) appellate counsel was ineffective for not raising these issues on direct appeal. In a supporting brief, petitioner also argued that the trial court gave an inadequate jury instruction on the conspiracy charge. On January 23, 2006, the trial court denied petitioner's motion. The Michigan Court of Appeals subsequently denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Mitchell, No. 276100 (Mich. Ct. App. July 26, 2007). On January 30, 2008, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Mitchell, 480 Mich. 1044; 743 N.W.2d 879 (2008).

On May 15, 2008, petitioner filed an undated second motion for relief from judgment, which alleged that the Monroe County Prosecutor's Office withheld exculpatory evidence from petitioner until December 2005. The evidence in dispute was a Michigan state police report that summarized the contents of a report received from the Los Angeles County Sheriff's Department. The Los Angeles report indicated that deputy sheriffs in Los Angeles had detained Lyons during a traffic stop and that Lyons had cocaine in his shoe.

On July 14, 2008, the trial court denied petitioner's motion on the basis that the evidence was not newly discovered. On November 16, 2009, the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Mitchell-El, No. 292926 (Mich. Ct. App. Nov. 16, 2009). Petitioner did not appeal that decision to the Michigan Supreme Court. See Larry Royster's Affidavit dated November 2, 2015, ECF No. 7-96.

In late 2009, petitioner filed a third motion for relief from judgment, claiming that the Michigan Department of Corrections had miscalculated his minimum sentence. On June 22, 2010, the trial court denied petitioner's motion. On October 7, 2011, the Michigan Court of Appeals denied leave to appeal on the basis that an "appeal from the denial of a successive motion for relief from judgment is prohibited by [Michigan Court Rule] 6.502(G)(1)." People v. Mitchell El, No. 305176 (Mich. Ct. App. Oct. 7, 2011). On July 24, 2012, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Mitchell-El, 492 Mich. 852; 817 N.W.2d 100 (2012).

Meanwhile, on July 19, 2011, petitioner filed a fourth motion for relief from judgment in which he claimed to have new evidence that Lieutenant Luke Davis

pursued false charges against petitioner in retaliation for petitioner's failure to pay Davis's bribe. The trial court held a hearing on petitioner's claim about Lieutenant Davis and denied relief after examining Davis's personnel file and determining that there were no complaints about Davis before petitioner's trial.

An additional issue was whether the prosecution withheld information about the Los Angeles County Sheriff's report concerning the traffic stop of Lyons. On August 8, 2012, the trial court determined that petitioner had previously raised this issue and, therefore, he was not entitled to relief from judgment pursuant to Michigan Court Rue 6.508(D)(2). Petitioner did not appeal the trial court's decision.

In 2013, petitioner filed his fifth motion for relief from judgment. He claimed that the prosecution had offered him a plea bargain and that his trial attorney was ineffective for advising him not to accept the offer. On July 19, 2013, the trial court denied the motion after concluding that petitioner had not satisfied the requirements of Michigan Court Rule 6.508(D). Petitioner appealed the trial court's decision, but the Michigan Court of Appeals dismissed his appeal on November 26, 2013, because petitioner failed to pay the filing fee in a timely manner. See People v. Mitchell-El, No. 317648 (Mich. Ct. App. Nov. 26, 2013). On July 29, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Mitchell-El, 496 Mich. 863; 849 N.W.2d 366 (2014).

### C. The Habeas Petition, Responsive Pleading, and Reply

Petitioner's habeas corpus petition has a typewritten date of October 20, 2014, but it was filed with the Clerk of the Court on July 23, 2015. Petitioner alleges as grounds for relief that (1) the State withheld exculpatory evidence from him, (2) he has

newly discovered evidence demonstrating his innocence, and (3) his trial attorney was ineffective for failing to fully explain the prosecution's plea offer to him and for advising him not to accept the offer. As noted above, respondent asserts that these claims are barred from substantive review by petitioner's failure to comply with the statute of limitations. In a reply to respondent's motion, petitioner asks the Court to equitably toll the limitations period and to excuse the late filing because he is actually innocent of the crimes for which he was convicted.

## II. Legal Framework

### A. Summary Judgment and the Statute of Limitations

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This rule applies to habeas corpus proceedings. Harris v. Stegall, 157 F. Supp.2d 743, 746 (E.D. Mich. 2001). The moving party bears the "burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact." Moldowan v. Warren, 578 F.3d 351, 374 (6th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor." Sanders v. Freeman, 221 F.3d 846, 851 (6th Cir. 2000).

The basis for respondent's motion is the statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA governs this case because Petitioner filed his habeas petition after AEDPA was enacted. See Lindh v. Murphy, 521 U.S. 320, 336 (1997) (holding that AEDPA generally applies to cases

filed after the Act became effective); Barker v. Yukins, 199 F.3d 867, 871 (6th Cir. 1999) (stating, "[i]t is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date").

AEDPA established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. Wall v. Kholi, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); Holbrook v. Curtin, __ F.3d __, __, No. 14-1247, 2016 WL 4271875, at *2 (6th Cir. Aug. 15, 2016) (citing § 2244(d)(1)). The limitations period runs from the latest of following four dates:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). "AEDPA also contains a tolling provision, which specifies that 'the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.' " Holbrook, 2016 WL 4271875, at *2 (quoting 28 U.S.C. § 2244(d)(2)).

"Direct review" concludes for purposes of § 2244(d)(1)(A) when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. Jimenez v. Quarterman, 555 U.S. 113, 119 (2009).

> For petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012). A petition for the writ of certiorari in the United States Supreme Court must be filed within ninety days of the judgment in a state court of last resort. Sup. Ct. R. 13.1.

### B. Application

Petitioner's judgment became final for purposes of § 2244(d)(1)(A) on September 28, 2004, ninety days after the Michigan Supreme Court denied leave to appeal on direct review. The statute of limitations began to run on the following day. Miller v. Collins, 305 F.3d 491, 495 n.4 (6th Cir. 2002). It ran uninterrupted for 266 days, that is, until June 22, 2005, when petitioner filed his first motion for relief from judgment. The motion remained under consideration in state court until January 30, 2008, when the Michigan Supreme Court denied leave to appeal the trial court's denial of petitioner's motion. At that point, petitioner had 99 days in which to file his habeas petition.

According to the state trial court, petitioner filed an undated second motion for relief from judgment on May 15, 2008. See People v. Mitchell-El, File Nos. 99-30238-FH and 98-29618, Order for Prosecutor's Response to Defendant's Second Mot. for Relief from J. and Memorandum of Law (Monroe Cty. Cir. Ct. May 15, 2008), ECF No.

7-56, Pg ID 2487. The May 15, 2008 filing was 105 days after Petitioner's first state collateral review came to an end, and six days after the federal statute of limitations expired. Thus, petitioner's habeas petition, filed in 2015, is untimely.

The habeas petition would be untimely even if the Court tolled the limitations period from the date of petitioner's first motion for relief from judgment (June 22, 2005) through July 29, 2014, when the Michigan Supreme Court denied leave to appeal the trial court's denial of petitioner's fifth and final motion for relief from judgment. The reason for this conclusion is that petitioner did not file his habeas petition until July 23, 2015, almost a year after the state courts concluded their review of his fifth post-conviction motion, and the statute also ran 266 days between the conclusion of petitioner's direct appeal and the filing of his first motion for relief from judgment.

The Court acknowledges that petitioner dated his habeas petition on October 20, 2014, and that, "[u]nder the prison mailbox rule, a habeas petition ordinarily "is considered filed when the prisoner provides the petition to prison officials for filing." Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 456 (6th Cir. 2012) (citing Cook v. Stegall, 295 F.3d 517, 521 (6th Cir. 2002) (citing Houston v. Lack, 487 U.S. 266, 273 (1988)).

> Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint. See, e.g., Goins v. Saunders, 206 Fed. Appx. 497, 498 n. 1 (6th Cir. 2006) (per curiam) ("[W]e treat the petition as filed on the date [the prisoner] signed it."); Bomar v. Bass, 76 Fed. Appx. 62, 63 (6th Cir. 2003) (order); Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (order).

Brand v. Motley, 526 F.3d 921, 925 (6th Cir. 2008).

Petitioner, however, did not sign his habeas petition, file a certificate of service, or swear under the penalty of perjury that he submitted his habeas petition to prison officials for mailing on October 20, 2014. Cf. Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (treating a motion to vacate sentence under 28 U.S.C. § 2255 as timely because the prisoner signed his motion under the penalty of perjury before the filing deadline); Bradford v. Lazaroff, 37 F. App'x 178, 180 (6th Cir. 2002) (treating the petitioner's habeas petition as filed on the date that the petitioner signed his petition under penalty of perjury). The envelope in which he mailed his habeas petition has a postmark of July 17, 2015, and petitioner has not offered any explanation for mailing his habeas petition almost nine months after the typewritten date on the petition. Under the circumstances, the Court declines to treat the habeas petition as filed on October 20, 2014, the typewritten date on the habeas petition. The Court finds the habeas petition to be time-barred under § 2244(d)(1)(A).

**C. Delayed Starts**

Petitioner claims that the State withheld exculpatory evidence from him, and he purports to have newly-discovered evidence demonstrating his innocence. Under 28 U.S.C. § 2244(d)(1)(B), the limitations period can begin to run on the date on which a state-created impediment is removed if the petitioner was prevented from filing by unlawful state action. And under 28 U.S.C. § 2244(d)(1)(D), the limitations period can begin to run on the date when the factual predicate for the claim or claims "could have been discovered through the exercise of due diligence." The question under § 2244(d)(1)(D)

> is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable

care. Habeas claimants invoking this provision shoulder the burden of proving that they exercised due diligence.

Townsend v. Lafler, 99 F. App'x 606, 608 (6th Cir. 2004) (internal citation omitted).

Petitioner could have raised his third claim (ineffective assistance of counsel) on direct appeal, because the factual predicate for that claim obviously was known to him at trial. Petitioner nevertheless contends that the prosecution failed to timely disclose exculpatory evidence regarding the Los Angeles police report about Lyons and Lyons' 2011 affidavit.

### 1. Lieutenant Davis and Lyons' 2011 Affidavit

Petitioner alleges that the prosecution withheld evidence that Lieutenant Luke Davis lied at petitioner's trial, that Davis set him up with the drugs, and that Davis stole about 400 grams of Lyons' cocaine. Petitioner asserts that this evidence would have supported his trial testimony that Davis tried to extort $30,000 from him.

Petitioner's allegations about Davis derive from Lyons' 2011 affidavit in which Lyons states that, after he was charged with possession of cocaine in Monroe, he took full responsibility for the cocaine found in his possession and informed Lieutenant Davis that petitioner had nothing to do with the crime. The affidavit goes on to say that Lieutenant Davis offered to make the charges against Lyons disappear if Lyons gave him $30,000. Lyons claims to have agreed to this deal and to have advised petitioner to pay the money to Davis. Lyons asserts that Davis subsequently informed him that petitioner kept the money, and, as a result, Davis intended to make sure that petitioner got at least thirty years in prison. Lyons also claims that Davis promised not to turn in all the cocaine if Davis kept his mouth shut. According to Lyons, there were 1,000 grams of cocaine in his car trunk, but only 599 grams were turned in to the police.

Lyons' affidavit is suspect for a couple of reasons. First, he is or was a friend of petitioner's. Cf. Milton v. Sec'y Dep't of Corr., 347 Fed. App'x 528, 531 (11th Cir. 2009) (questioning the reliability of an affidavit offered by a friend of the habeas petitioner). Second, Lyons filed a affidavit in petitioner's behalf in 2005, and he said nothing then about Davis's allegedly unethical conduct.

Finally, although Davis eventually was charged with embezzlement and several other crimes in an unrelated case, petitioner's trial was in 2001, and the charges against Davis covered the period of March 1, 2006, through December 31, 2008. See Pet. for Writ of Habeas Corpus, Ex. F. Petitioner's own attorney at a motion hearing in state court conceded that, if there was no complaint about Lieutenant Davis before petitioner's trial, there was nothing for the prosecution to report or to disclose. (Mot. Hr'g at 5-6, Oct. 7, 2011, ECF No. 7-68, Pg ID 2669-70). The trial court subsequently determined from a review of Davis's personnel records that no adverse action was taken against Davis prior to petitioner's trial. See People v. Mitchell-El, Nos. 99-30238-FH and 98-29618-FH (Monroe Cty. Cir. Ct. Nov. 8, 2011), ECF No. 7-69, Pg ID 2688; Mot. Hr'g at 3, ECF No. 7-72, Pg ID 2711.)

There is no credible basis for petitioner's argument that the prosecution withheld Lyons' allegations about Davis. There also is no basis for tolling the limitations period under § 2244(d)(1)(D), because petitioner could have acquired the information about Davis from Lyons in 2005 when Lyons prepared a previous affidavit for petitioner.

### 2. The Los Angeles Police Report

Petitioner contends that the prosecution also withheld evidence of the Los Angeles County Sheriff's report concerning the traffic stop involving Lyons. The police

report indicated that Lyons had an airline ticket in his possession and shoes with cocaine in the heel. Although petitioner contends that the prosecution withheld the report from him for years, there was mention of a police report from California at trial. Lieutenant Davis testified that he contacted someone in the drug unit in Los Angeles and received a copy of the report and other paperwork from the person. (Trial Tr. Vol. IV, at 10, June 7, 2001, ECF No. 7-34, Pg ID 1655.) It appears from this testimony that the prosecution did not withhold information obtained from the Los Angeles County Sheriff and that petitioner could have obtained the police report in question if he had acted with reasonable diligence before or during trial.

The report, moreover, is not exculpatory evidence. In fact, it tended to reinforce the prosecution's theory that petitioner and Lyons were involved in a conspiracy to obtain cocaine from California and distribute it in Ohio.

### 3. Summary

For the foregoing reasons, the Court concludes that the factual predicate for petitioner's claims could have been discovered with reasonable diligence in time to file a timely habeas petition. Furthermore, the State did not create an impediment to filing a timely habeas petition. The Court therefore declines to delay the start of the limitations period under § 2244(d)(1)(B) or § 2244(d)(1)(D).

### D. Equitable Tolling

Petitioner urges the Court to equitably toll the limitations period. The Supreme Court, however, has "made clear that a [habeas] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland

v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting Holland's two-factor test for determining whether a habeas petitioner is entitled to equitable tolling).

Petitioner has been pursuing his rights for years, but he has not shown that some extraordinary circumstance stood in his way of filing a timely habeas petition. The Court therefore declines to equitably toll the limitations period.

### E. Actual Innocence

Petitioner claims that his untimely petition should be excused because he is innocent of the crimes for which he is incarcerated. The Supreme Court has held that actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations. McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

Petitioner's claim of actual innocence is based on Lyons' 2011 affidavit in which Lyons states that petitioner had nothing to do with the crime and that Lieutenant Davis threatened to have petitioner sent to prison for at least thirty years because petitioner did not pay him $30,000. Lyons also claims in his affidavit that Davis threatened to sent Lyons to prison for thirty years if Lyons did not keep his mouth shut.

Lyons' affidavit must be "treated with a fair degree of skepticism" because it was signed years ten years after petitioner's trial, and it is inconsistent with petitioner's own admissions to law enforcement officials that he dealt with large quantities of cocaine and that the cocaine in Lyons' car belonged to him. Herrera v. Collins, 506 U.S. 390,

423 (1993) (O'Connor, J., concurring). Also, the record indicates that Lyons had nothing to lose by committing perjury when he signed the 2011 affidavit because he was serving a sentence of forty to sixty years in prison. (Mot. Hr'g at 14, Oct. 7, 2011, ECF No. 7-68, Pg ID 2678.)

Furthermore, the evidence against petitioner was substantial. The jury was informed that he had pleaded guilty to aiding and abetting the two men who broke into the office of the towing company that had towed Lyons' car. And Lieutenant Davis testified as to why he thought the cocaine in Lyons' car belonged to petitioner. He cross-referenced the license plate on the car that Lyons was driving when he was stopped and determined that the white Cadillac was registered to 512 Mettler Street, which was an address that petitioner had used. The registration plate on the vehicle that petitioner was driving during the breaking-and-entering incident was registered to an address that Lyons had used. And a confidential informant gave Lieutenant Davis additional information that led Davis to believe the shoes or boots with cocaine in Lyons' car belonged to petitioner. Similar shoes or boots with hollowed-out heels were found at the Woodland Street address, which was linked to petitioner. (Trial Tr. Vol. IV, at 10, 65-66, June 7, 2001, ECF No. 7-34, Pg ID 1655, 1710-11.)

Petitioner denied the charges against him and claimed that Lieutenant Davis asked him for $30,000 in exchange for help on petitioner's breaking-and-entering charge (id. at 195, 202-04, 232-34, Pg ID 1840, 1847-49, 1877-79), but his credibility was called into question by his lies. He gave a false name and address when a police officer encountered him at the site of the break-in. (Trial Tr. Vol. I, at 267, 271, June 4, 2001, ECF No. 7-31, Pg ID 1302, 1306.) He also appeared to have lied when he told a

civilian witness and a police officer at the towing office that his car had broken down there. Both witnesses found the car to be in good working condition. (Id., at 182-83, Pg ID 1217-18 (Richard Ellis' testimony); id. at 267, 270, Pg ID 1302, 1305-06 (Deputy Sheriff Joseph Gore's testimony)). Petitioner gave a false name when he was booked on the breaking-and-entering charge (Trial Tr. Vol. III, at 24, June 6, 2001, ECF No. 7-33, Pg ID 1381), and he admitted this at trial (Trial Tr. Vol. IV, at 248, June 7, 2001, ECF No. 7-34, Pg ID 1893). According to the prosecutor, petitioner also lied when he (1) filled out an application for ownership of the white Cadillac, (2) stated that he met Officer Shinkle three times in September of 1998, and (3) testified that he sought out Shinkle because he feared for his safety. (Id. at 343, Pg ID 1988.)

Lieutenant Davis, moreover, testified that petitioner had contacted him and asked to speak with Davis when Davis was investigating the case against Lyons. At their subsequent meeting, petitioner stated that he wanted to help Lyons. Petitioner then admitted that the cocaine found in the car Lyons had been driving on the night in question was his (petitioner's) cocaine. Petitioner went on to describe how he would order the cocaine from Los Angeles, pay $16,000 per kilogram of cocaine, have the cocaine sent to him by air with couriers, and then sell the cocaine in Toledo for $24,000 to $25,000 per kilogram. Petitioner stated that his biggest transaction had involved five kilograms of cocaine. (Id. at 4-7, 77-78, Pg ID 1649-52, 1722-23.) At another meeting with Davis, petitioner once again offered to help Lyons. He then cooperated with Davis by calling Los Angeles and setting up a deal for half a kilogram of cocaine. (Id. at 80-81, Pg ID 1725-26.) Although Davis warned petitioner that he, like Lyons, could be charged with a narcotics offense, petitioner was not worried about that because he did

not think the police had enough evidence against him. (Id. at 87, 154, Pg ID 1732, 1799.)

Detective Gary Shinkle of the Monroe County Sheriff's Office corroborated critical parts of Davis's testimony. Shinkle testified that petitioner informed him in Davis's presence that he purchased two or three kilos of cocaine at a time and usually as much as five kilos. (Id. at 277-78, 292, Pg ID 1922-23, 1937.) Shinkle also corroborated Davis's testimony about the drug deal that petitioner set up for them. (Id. at 276-81, Pg ID 1921-1926.)

The Court concludes from the record that petitioner has not alleged a credible claim of innocence. Therefore, he may not pass through the "actual innocence" gateway and have his claims heard on the merits.

### III. Conclusion

Petitioner filed his habeas petition after the statute of limitations. He is not entitled to equitable tolling of the limitations period, and he has not asserted a credible claim of actual innocence. Therefore, respondent is entitled to judgment as a matter of law. The Court grants respondent's motion for summary judgment and dismissal of the habeas petition (ECF No. 6) and dismisses the habeas corpus petition (ECF No. 1) as untimely.

### IV. Denying a Certificate of Appealability; Granting Leave to Proceed In Forma Pauperis on Appeal

Before a habeas petitioner may appeal a District Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here,

a district court rejects a habeas petition on procedural grounds without reaching the merits of the petitioner's underlying claims, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate whether the Court's procedural ruling is correct. The Court therefore denies a certificate of appealability. Petitioner nevertheless may seek a certificate of appealability from the United States Court of Appeals for the Sixth Circuit, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and he may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

Dated: September 20, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 20, 2016, by electronic and/or ordinary mail and also on Derrick Mitchell #325800, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.

s/Barbara Radke
Deputy Clerk